UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

LAMONT SMITH,

                    Petitioner

          v.                              C-1-04-162

WANZA JACKSON,

                    Respondent


<u>ORDER</u>

This matter was referred pursuant to 28 U.S.C. § 636 to the United States Magistrate Judge for consideration and report on the Petition for Writ of Habeas Corpus filed by the petitioner pursuant to 28 U.S.C. § 2254.  The matter is before the Court upon the Report and Recommendation of the Magistrate Judge (doc. no.43) recommending that the Petition for Writ of Habeas Corpus be dismissed, and upon petitioner's objections thereto (doc. no. 47).

<u>Report and Recommendation</u>

Petitioner, who currently is in state custody at the Warren Correctional Institution in Lebanon, Ohio, has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  This matter is before the Court on the petition; respondent's "Answer" with exhibits; petitioner's "traverse" in reply to the "Answer;" and the transcript of the state criminal trial proceedings.  (Docs. 1, 17, 21, 33).

2

## Factual And Procedural Background

On January 5, 2001, petitioner was indicted by the Hamilton County, Ohio, grand jury on three counts of burglary as defined in Ohio Rev. Code § 2911.12(A).  (Doc. 17, Ex. 1).  After a jury trial, petitioner was acquitted on the first count of the indictment, but was found guilty of burglary on the second count and of the lesser-included offense of attempted burglary on the third count.  (*Id.,* Exs. 2-5, 8).

Thereafter, petitioner's counsel filed a motion for acquittal or, in the alternative, for a new trial, which was overruled at petitioner's sentencing hearing held on June 14, 2001.  (*Id.,* Ex. 6; Ex. 7, Tr. 1226).  On July 30, 2001, petitioner was sentenced to consecutive terms of imprisonment of seven (7) years for the burglary offense as charged in Count 2 of the indictment, and four (4) years for the lesser-included attempted burglary offense charged in Count 3 of the indictment.  (*Id.*, Exs. 9-10).

With the assistance of new counsel, petitioner timely appealed to the Ohio Court of Appeals, First Appellate District, raising the following assignments of error: (1) petitioner's trial counsel was ineffective by "mention[ing] to the jury his inadmissible prior misdemeanor convictions which had occurred over 15 years before trial;" (2) the prosecutor engaged in misconduct, which deprived petitioner of due process, during petitioner's cross-examination; (3) the trial court violated petitioner's constitutional rights to due process and equal protection "by overruling his *Batson* challenge to the State's use of its peremptory challenges to systematically exclude African-American jurors from the trial;" (4) the trial court violated petitioner's right to due process by denying his "motion to suppress the out-of-court identifications made of him by some of the State's witnesses;" (5) the "evidence adduced at trial was insufficient as a matter of law to sustain the conviction[s]" for burglary and attempted burglary; (6) the judgments of conviction were "against the manifest weight of the evidence;" (7) the trial court violated petitioner's right to due process "by allowing unfairly prejudicial 'other acts' evidence . . . to be admitted during the trial;" and (8) the trial court violated petitioner's right to due process "by unfairly limiting the testimony of the defendant's expert in the psychology of eyewitness identification at trial." (*Id.,* Ex. 12).

3

On June 14, 2002, the Ohio Court of Appeals overruled petitioner's assignments of error and affirmed the trial court's judgment of conviction. (*Id.,* Exs. 14-15). In its Decision, the court made findings of fact, which are presumed correct under 28 U.S.C. § 2254(e)(1),[1] regarding the incidents that resulted in petitioner's burglary and attempted burglary convictions, as follows:

"The burglary for which Smith was convicted occurred on December 7, 2000. Shirley Evans was returning her young niece to her home, and as the niece entered the apartment and turned on the living-room light, she saw Smith in the apartment. Smith was emerging from one of the bedrooms and walking into the living room. Smith yelled at them. Everyone ran out of the apartment immediately. Smith got within approximately ten or twelve feet of the young niece. Later, she saw that the coins in the cup her mother had used to collect the laundry money were gone and that her mother's red and black duffel bag was on her mother's bed. She identified Smith in court as the person she had seen on December 7 in the apartment, and she had earlier selected his photograph from among those shown to her shortly after the burglary was reported.

Shirley Evans also saw Smith in the living room after she followed her young niece into the apartment. She was within fifteen to sixteen feet and saw Smith's face. Shirley Evans saw her sister's jewelry in the red and black duffel bag and her sister's brown jewelry box on the bed. Several days later, she was shown an array of photographs at her place of business in downtown Cincinnati and picked out Smith within a few seconds. She was also shown a second set of photographs at her house and picked out Smith. She testified that she had never seen Smith on television. At trial, Shirley Evans was absolutely certain that Smith was the man she had seen in the apartment on December 7. Shirley Evans' sister, the mother of the young

---

[1]    28 U.S.C. § 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct" unless petitioner rebuts the presumption by "clear and convincing evidence." Petitioner has neither cited nor presented any evidence to rebut the Ohio court's factual findings quoted herein. Therefore, petitioner has not demonstrated by clear and convincing evidence that such findings are erroneous.

4

niece, who arrived home after Smith had fled, saw that only one of three watches she had purchased as Christmas gifts was in the red and black duffel bag. The other two were gone. She had not left the duffel bag sitting on the bed earlier in the day. Her kitchen window latch no longer worked after December 7. A chair was by the kitchen window with a footprint on it that did not belong to anyone who lived in the apartment. She testified that she and her daughter never stood on chairs. She also recognized Smith from having seen him once before when her landlord had needed items hauled away from the apartment building.

Officer Lewis Arnold testified that he found a successful completion form for an electronic monitoring unit ("EMU form") outside the apartment building, after he had concluded his search inside the Evans apartment. He put the EMU form, which included among other information, Smith's name, in a property envelope and sent it on to Detective Ken Brickler.

Detective Brickler, using information from Smith's EMU form, ordered a photo lineup that included Smith's picture. Detective Brickler testified that the young niece and Shirley Evans took approximately thirty seconds to pick Smith from among the photographs.

Smith was also convicted of the attempted burglary of Linda Neal's downstairs apartment in a two-family building owned by Betty Nowell, Neal's sister, who resided upstairs. Neal, who lived with other family members, was not at home at the time Smith was first observed by Nowell from upstairs next to a window. The attempted burglary occurred on December 23, 2000. Nowell testified that, having heard noises around 6:15 p.m., she eventually looked outside and saw Smith, who looked up at her, standing near a downstairs window. They stared at each other for approximately fifteen seconds, and Nowell then called for emergency assistance. Thinking Smith had fled, Nowell went downstairs and outside the building only to see Smith again by the same window. She yelled at him and Smith fled. She guessed that he was approximately eight feet away. She could see his face. The window screen had been removed, and the window was broken. In court, Nowell identified Smith as the man she had seen on December 23. Nowell had not seen Smith on television prior to May 7, when she herself had been at the courthouse and had seen a local news station filming, at which time Smith had already been charged with the crimes.
Detective Brickler testified that he showed Nowell two sets of photographs

5

on two different occasions. He testified that she did take longer, but not much longer, than both of the Evanses took before she picked Smith from the two sets of photographs that she was shown. A person living in Nowell's neighborhood was included in the second set of photographs shown to Nowell out of concern that the perpetrator might be a neighbor, who was somewhat similar to Smith in appearance."

(*Id.,* Ex. 14, pp. 2-4).

Petitioner's counsel timely appealed to the Supreme Court of Ohio, asserting as propositions of law the same claims of error that had been raised on direct appeal to the Ohio Court of Appeals. (*Id.,* Exs. 16-17). On October 2, 2002, the state supreme court declined jurisdiction to hear the case and summarily dismissed the appeal "as not involving any substantial constitutional question." (*Id.* Ex. 19).

In the meantime, on February 2, 2002, during the pendency of his direct appeal before the Ohio Court of Appeals, petitioner filed a timely *pro se* motion for post-conviction relief pursuant to Ohio Rev. Code § 2953.21 with the trial court. (*Id.,* Ex. 25). In the petition, petitioner asserted as "claims for relief" that (1) the "trial court erred when it prevented defense counsel from reviewing the police detective Brickler's file, from which the detective read during his testimony, and which contained ... three witnesses['] description of the offender as six inches shorter than the accus[]ed;" (2) "the trial court erred in violation of the Due Process Clause of the United States Constitution by denying defendant's motion to suppress the out of court identification made of him by some of the State's witnesses;" (3) the trial court's judgment was "against the manifest weight of the evidence adduced at trial;" and (4) he was "denied due process when the court failed to meet the requirements of R.C. 2929.19(B)(2)(c) in imposing consecutive sentences." (*Id.*). On March 11, 2002, petitioner filed a motion to amend the post-conviction petition to add three ineffective assistance of counsel claims based on his trial counsel's alleged failure (1) "to subpoena police files in a timely fashion to present during trial;" (2) "to subpoena the cab printouts of the 911 calls in a timely fashion to be presented as evidence[] during . . . trial;" and (3) "to submit a restraining order in defendant's defense during trial." (*Id.,* Ex. 26).

6

On July 1, 2004, the Hamilton County Common Pleas Court entered findings of fact and conclusions of law denying petitioner's "amended petition for post-conviction relief" on the grounds that the petition was barred from review "by res judicata" and was "not supported by evidentiary documents." (*Id.,* Ex. 29). Respondent states in the Answer that petitioner did not appeal the denial of his post-conviction petition any further in the state courts. (*Id.,* Brief, p. 10).

On September 4, 2002, during the pendency of his appeal to the Supreme Court of Ohio from the Ohio Court of Appeals' direct appeal decision, petitioner also filed a timely *pro se* motion for reopening of his appeal pursuant to Ohio R. App. P. 26(B) with the Ohio Court of Appeals, First Appellate District. (*Id.,* Ex. 20). In the motion, petitioner contended that he was denied his right to effective assistance of counsel on direct appeal, because his appellate attorney "failed to recognize, present and preserve several constitutional violations" stemming from "a pattern of misconduct [by the prosecutor] throughout the proceedings;" judicial bias; "[u]nconstitutionally [o]btained [i]ndictment;" and "several errors" by trial counsel amounting to ineffective assistance. (*Id.*).

On February 28, 2003, the Ohio Court of Appeals denied petitioner's motion to reopen the appeal. (*Id.,* Ex. 24).

Petitioner, thereafter, attempted to perfect an appeal to the Supreme Court of Ohio. Petitioner states in his "traverse" brief that his "original appeal to the Ohio Supreme Court was received by that Court on April 9, 2003." (Doc. 33, Brief, p. 4). However, by letter dated April 9, 2003, petitioner was informed by the deputy clerk that the documents "were not filed and are being returned to you" due to petitioner's failure to comply with Rule III, Section 1(D), of the Rules of Practice of the Supreme Court of Ohio, which requires that a "copy of the court of appeals opinion and judgment entry being appealed" be included with the memorandum in support of jurisdiction. (*Id.,* attached exhibit).

Petitioner states that "after correcting the mistake and sending the appeal back to the Supreme Court[,] the Court received the appeal on April 15, 2003." (*Id.,* Brief, p. 4). The documents were returned to petitioner by letter dated April 15, 2003, because "the materials necessary to perfect your appeal were not filed within the 45-day time period prescribed by Rule II, Section 2(A)(1)[,]" of the Rules of Practice of the Supreme Court of Ohio. (*Id.,* attached exhibit).

7

Finally, petitioner states that he attempted to file a delayed appeal with the Supreme Court of Ohio.  (*Id.,* Brief, p. 4).  By letter dated April 28, 2003, petitioner was informed by the deputy clerk that his delayed appeal documents were being returned to him because "[p]ursuant to Rule II, Section 2(A)(4)(b), [of the Rules of Practice of the Supreme Court of Ohio,] the Clerk's Office must refuse motions for delayed appeal involving postconviction relief, including appeals brought pursuant to *State v. Murnahan* (1992), Ohio St. 3d 60 and App. R. 26(B)."  (*Id.,* attached exhibit).

On February 12, 2004, the Court received the instant federal habeas corpus petition, which is not dated, for filing.  The petition was stamped as "filed" on February 24, 2004. (Doc. 1).  In the petition, petitioner alleges the following grounds for relief.

**Ground One:**  Petitioner was denied competent counsel, when trial counsel introduced prior record information to the jury.

**Ground Two:**  Petitioner was denied a fair trial through prosecutorial misconduct, when the prosecutor introduced inadmissible evidence.

**Ground Three:**  [P]etitioner was denied the rights of fair and equal protection and due process, when peremptory challenges were used to systematically exclude all members of a minority from the jury.

**Ground Four:**  Petitioner was denied the right to present a defense, when the trial court limited the testimony of an expert witness.

**Ground Five:**  Petitioner was denied a fair trial through prosecutorial misconduct, when the prosecutor improperly offered unsworn testimony bearing upon the evidence.

**Ground Six:**  Petitioner was denied a fair trial, when the prosecutor attacked opposing witnesses with claims of conspiracy.

**Ground Seven:**  Petitioner was denied a fair trial through prosecutorial misconduct, when the prosecutor improperly vouched regarding witness credibility.

8

**Ground Eight:** [P]etitioner was denied the right of a fair trial and due process through prosecutorial misconduct, when the prosecutor misstated evidence[.]

**Ground Nine:** Petitioner was denied a fair trial, the right to present a defense, and due process, when prosecution withheld exculpatory evidence.

**Ground Ten:** [P]etitioner was denied a fair trial and due process through judicial bias.

**Ground Eleven:** Petitioner was denied due process, when the indictment was gained through false evidence presented to the Grand Jury.

**Ground Twelve:** Petitioner was denied a fair trial and due process when the court failed to ascertain the basis of objections and adhere to stated remedies to objections.

**Ground Thirteen:** Petitioner was denied competent counsel, when trial counsel failed to object to prosecutorial misconduct.

**Ground Fourteen:** Petitioner was denied competent counsel, when trial counsel failed to raise mitigating evidence in Criminal Rule 29 Motion to Acquit.

**Ground Fifteen:** [P]etitioner was denied competent counsel, when counsel failed to obtain and introduce exculpatory evidence at trial, in violation of the Sixth Amendment to the United States Constitution.

**Ground Sixteen:** [Petitioner] received ineffective assistance of appellate counsel on appeal of right, in violation of the Sixth Amendment to the United States Constitution.

(*Id.,* pp. 10, 13-19, 21, 23, 25, 27-31).

9

In response to the petition, respondent concedes that the petition is not barred from review on statute of limitations grounds. (*See* Doc. 17, Brief, p. 12). It is further conceded that at the time the petition was filed, an exhaustion issue was presented because petitioner's petition for post-conviction relief was then pending before the trial court for ruling, which prompted respondent to file a motion to dismiss in this action (*see* Doc. 8). Respondent's motion to dismiss was denied, however, on March 7, 2005, because by then all available state court remedies had been exhausted, as the trial court had denied post-conviction relief on July 1, 2004 and petitioner did not pursue an appeal in the state courts from that ruling. (*See* Docs. 12, 14).

In the Answer filed after the motion to dismiss was denied, respondent contends that only the claims alleged in Grounds One through Four of the petition are "fully exhausted and preserved for federal review" by this Court. (Doc. 17, Brief, p. 12). Respondent argues that petitioner has waived the remaining claims for relief alleged in Grounds Five through Sixteen because he procedurally defaulted them in the state courts. (*Id.,* pp. 12-20).

## OPINION

### A. Petitioner Has Waived The Claims Alleged In Grounds Five Through Sixteen Of the Petition Due To His Procedural Defaults In The State Courts

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state defendant with federal constitutional claims must fairly present those claims to the state courts for consideration before raising them in a federal habeas corpus action. *See* 28 U.S.C. § 2254(b)(1), (c); *see also Anderson v. Harless,* 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor,* 404 U.S. 270, 275-76 (1971). A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 848 (1999); *Hafley v. Sowders,* 902 F.2d 480, 483 (6th Cir. 1990); *Leroy v. Marshall,* 757 F.2d 94, 97, 99-100 (6th Cir.), *cert. denied,* 474 U.S. 831 (1985).

10

If petitioner fails to fairly present his claims through the requisite levels of state appellate review to the state's highest court or commits some other procedural default relied on to preclude review of the merits of the claims by the state's highest court, and if no avenue of relief remains open or if it would otherwise be futile for petitioner to continue to pursue his claims in the state courts, his claims for habeas corpus relief are subject to dismissal with prejudice on the ground that they are waived. *See O'Sullivan,* 526 U.S. at 847-848; *Harris v. Reed,* 489 U.S. 255, 260-62 (1989); *McBee v. Grant,* 763 F.2d 811, 813 (6th Cir. 1985); *see also Weaver v. Foltz,* 888 F.2d 1097, 1099 (6th Cir. 1989). If, because of a procedural default, petitioner has not had his claims considered by the state's highest court and he can no longer present his claims to the state courts, he has waived the claims for purposes of federal habeas corpus review unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional errors, or that failure to consider the claims will result in a "fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750 (1991); *see also Murray v. Carrier,* 477 U.S. 478, 485 (1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

In this case, as respondent has pointed out (*see* Doc. 17, Brief, pp. 12-13), petitioner committed a number of procedural defaults with respect to the claims alleged in Grounds Five through Sixteen of the petition. First, to the extent such claims are based on the trial record, petitioner committed a procedural default by failing to raise them as assignments of error on direct appeal to the Ohio Court of Appeals, or as propositions of law on further appeal to the Supreme Court of Ohio. Second, to the extent some of the claims are not record-based and petitioner properly sought to bring them to the Ohio courts' attention in the state post-conviction proceeding, he committed a procedural default by failing to appeal the trial court's denial of his post-conviction petition for further consideration by Ohio's appellate courts.

Finally, to the extent petitioner alleges in Ground Sixteen that his state appellate counsel was ineffective and relies on his procedurally-defaulted claims alleged in Grounds Five through Fifteen as instances of ineffectiveness by his appellate counsel, petitioner committed a procedural default by failing to perfect a timely appeal to the Supreme Court of Ohio from the Ohio Court of Appeals' denial of his application to reopen the appeal for consideration of his ineffective assistance of appellate counsel claims.

11

It is well-settled that, on federal habeas corpus review, a court may be barred from considering an issue of federal law from a judgment of a state court if the state judgment rests on a state-law ground that is both "independent" of the merits of the federal claim and an "adequate" basis for the state court's decision. *Harris,* 489 U.S. at 260-62.

The "adequate and independent state ground" doctrine has been applied to state decisions refusing to address the merits of a federal claim because of violations of state procedural rules. *Id.* at 261; *Sykes,* 433 U.S. at 86-87; *see also McBee,* 763 F.2d at 813. Such a procedural default does not bar consideration of a federal claim on habeas corpus review unless the last state court rendering a judgment in the case "clearly and expressly" states that its judgment rests on the state procedural bar. *Harris,* 489 U.S. at 263. In cases where the last state court to render a reasoned opinion on the claim explicitly relies on a procedural bar, the court will presume that a later unexplained order did not silently disregard the procedural default and consider the merits of the claim. *Ylst v. Nunnemaker,* 501 U.S. 797, 803-04 (1991).

In addition, the rule precluding federal habeas corpus review of claims rejected by the state courts on state procedural grounds applies only in cases where the state rule relied on by the state courts is deemed "adequate" or, in other words, involves a "firmly established and regularly followed state practice" at the time that it was applied. *Ford v. Georgia,* 498 U.S. 411, 423-24 (1991); *Richey v. Mitchell,* 395 F.3d 660, 679 (6th Cir.) (citing *White v. Schotten,* 201 F.3d 743, 751 (6th Cir.), *cert. denied,* 531 U.S. 940 (2000)), *rev'd on other grounds,* 126 S.Ct. 602 (2005) (per curiam); *Warner v. United States,* 975 F.2d 1207, 1213 (6th Cir. 1992), *cert. denied,* 507 U.S. 932 (1993).

In this case, petitioner attempted a timely appeal to the Supreme Court of Ohio from the denial of his application for reopening. However, he failed to attach the order being appealed to his memorandum in support of jurisdiction, as explicitly required by Rule III, § 1(D), of the Rules of Practice of the Supreme Court of Ohio. Petitioner's noncompliance with this state procedural rule was clearly and expressly relied on by the Supreme Court of Ohio's deputy clerk of court when he refused to file and returned the documents submitted by petitioner that were received on April 9, 2003. (*See* Doc. 33, attached exhibit).

12

Petitioner contends in his "traverse" brief that the state supreme court's procedural rules require the clerk to refuse to file an appeal only in two circumstances not present here – (1) when the notice of appeal and memorandum in support of jurisdiction are not filed within the requisite 45-day appeal period; or (2) when the appellant fails to "tender a memorandum in support of jurisdiction for timely filing along with the notice of appeal." (*Id.*, Brief p. 5). In support of his argument, petitioner points to a handful of cases, where the Supreme Court of Ohio refused to dismiss an appeal or to strike the appellant's brief on appeal despite the appellant's minor technical violation of rules set forth in the state supreme court's rules of practice. (*See id.*, pp. 8-10) (and cases cited therein); *see also State ex rel. Wilcox v. Seidner*, 667 N.E.2d 1220, 1221 (Ohio 1996) (*per curiam*).

The cases cited by petitioner do not address, however, the practice of the Supreme Court of Ohio's Clerk's Office of refusing to file and returning documents to parties that fail to comply with the state supreme court's rules of practice. Contrary to petitioner's contention, and as evidenced by the form letter utilized by the state supreme court's deputy clerk in returning petitioner's papers to him, it appears to have been a well-established and regularly-followed practice at the time of petitioner's procedural default for the clerk not to file, but rather to return, documents submitted for filing by criminal defendants that failed to satisfy the requirements for pleadings explicitly set forth in the court's procedural rules. *Cf. State ex rel. Fuller v. Mengel*, 800 N.E.2d 25, 26-28 (Ohio 2003) (per curiam) (upholding as constitutional the deputy clerks' application of the Supreme Court of Ohio's rules of practice to prohibit an inmate's attempted filing of an untimely corrected memorandum, after an initial timely memorandum was returned to the inmate because it exceeded the page limit and contained prohibited attachments proscribed by the rules).[2]

---

[2] *See also Metz v. Supreme Court of Ohio,* 46 Fed.Appx. 228, 234 (6th Cir. Aug. 19, 2002) (not published in Federal Reporter) (affirming the dismissal of civil rights claims stemming from the refusal of the state supreme court clerk to accept an attorney's merits brief for filing because there was "no apparent due process violation" in entrusting a clerk of the court "to make the determination whether Plaintiff's merits brief was filed in accordance with the applicable rules of practice governing the Supreme Court of Ohio," and the attorney failed to show he suffered a due process injury resulting from the enforcement of a rule which left "open several avenues for filing briefs which Plaintiff apparently failed to utilize"), *cert. denied,* 537 U.S. 1090 (2002).

13

Therefore, this Court concludes that the state procedural ground relied on by the deputy clerk in refusing to file petitioner's initial timely, but improper, appeal documents was both "independent" and "adequate."

In addition, when petitioner "correct[ed] the mistake" and re-attempted an appeal, the Supreme Court of Ohio refused to accept petitioner's documents for filing by "clearly and expressly" relying on petitioner's failure to perfect a timely appeal "within 45 days from the entry of the judgment being appealed" in accordance with the well-established and regularly-followed time requirement set forth in Rule II, § 2(A)(1)(a), of the Rules of Practice of the Supreme Court of Ohio. (Doc. 33, attached exhibit). Petitioner's later attempt to file a delayed appeal with the Supreme Court of Ohio did not cure this procedural default. As a deputy clerk of the Supreme Court of Ohio pointed out in the final letter to petitioner dated April 28, 2003, Rule II, § 2(A)(4)(b), of the Rules of Practice of the Supreme Court of Ohio, explicitly provides that "the provision for delayed appeals ... does not apply to appeals ... brought pursuant to ... App. R. 26(B)." (*See id.,* attached exhibit).

Citing the Sixth Circuit's panel decision in *White v. Schotten,* 201 F.3d 743 (6th Cir.), *cert. denied,* 531 U.S. 940 (2000), petitioner contends in his "traverse" brief that his application for reopening was part of his direct appeal, wherein delayed appeals to the Supreme Court of Ohio are permitted within the court's discretion under Rule II, § 2(A)(4)(a), of the Rules of Practice of the Supreme Court of Ohio. (Doc. 33, Brief, pp. 10-12).

However, the Sixth Circuit in an *en banc* decision recently changed its position on this issue, holding in accordance with state case-law that an application for reopening of the appeal under Ohio R. App. P. 26(B) is a collateral post-conviction remedy rather than part of the direct appeal. *Lopez v. Wilson,* 426 F.3d 339, 351-53 (6th Cir. 2005) (en banc), *cert. denied,* 126 S.Ct. 1880 (2006); *see also Morgan v. Eads,* 818 N.E.2d 1157 (Ohio 2004).

Therefore, the Court concludes that the deputy clerk's rejection of petitioner's untimely attempts to perfect an appeal to the Supreme Court of Ohio also was based on both an independent and adequate state procedural ground.

14

Accordingly, in light of petitioner's numerous procedural defaults in the state courts, it appears that the claims alleged in Grounds Five through Sixteen of the petition are waived unless petitioner can show cause for his defaults and actual prejudice as a result of the alleged errors, or demonstrates that failure to consider the claims will result in a "fundamental miscarriage of justice." *See Coleman,* 501 U.S. at 750; *see also Murray,* 477 U.S. at 485; *Isaac,* 456 U.S. at 129; *Sykes,* 433 U.S. at 87.

Petitioner has suggested both as an independent claim of error in Ground Sixteen of the petition and in his state reopening application that his appellate counsel's ineffectiveness constitutes "cause" for his procedural default in failing to raise many of his defaulted claims on direct appeal.  Ineffective assistance of appellate counsel may constitute cause for a procedural default, *Murray,* 477 U.S. at 488, unless that claim also has been procedurally defaulted, *Edwards v. Carpenter,* 529 U.S. 446, 452 (2000); *Richey,* 395 F.3d at 679.  Here, as discussed above, *see supra* pp. 10-13, petitioner procedurally defaulted his ineffective assistance of appellate counsel claims, asserted as "cause" for his procedural default on direct appeal, because he did not comply with certain procedural requirements in perfecting a timely appeal to the Supreme Court of Ohio from the denial of his reopening application by the Ohio Court of Appeals.  Therefore, petitioner is unable to demonstrate "cause" in this case.

Petitioner also contends in his "traverse" brief that a "fundamental miscarriage of justice" will occur if his procedurally-defaulted claims are not considered on the merits because he is actually innocent of the burglary and attempted burglary offenses he was convicted of committing.   (Doc. 33, Brief, p. 20).  Petitioner has attached a self-serving "statement of the facts" to his brief as evidence demonstrating his innocence.  (*See id.,* attached "Sworn Statement Of Petitioner").

Under the "fundamental miscarriage of justice" exception to the waiver doctrine, petitioner must demonstrate that the alleged constitutional violations "probably resulted in the conviction of one who is actually innocent" of the crimes charged.  *See Murray,* 477 U.S. at 495-96; *see also Schlup v. Delo,* 513 U.S. 298, 327 (1995); *cf. Souter v. Jones,* 395 F.3d 577, 597-602 (6th Cir. 2005).

15

Under this "actual innocence" standard, the otherwise-barred petitioner "must show it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt" in light of all the evidence, "including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become available only after the trial." *Schlup,* 513 U.S. at 327-28 (citing with approval the standard enunciated by Judge Friendly in a 1970 law review article, *Is Innocence Relevant? Collateral Attack on Criminal Judgments,* 38 U.Chi.L.Rev. 142, 145 (1970)).

To be credible, a claim of actual innocence requires petitioner to support his allegations "with new reliable evidence . . . that was not presented at trial" either because it was wrongly excluded or unavailable at the time of trial. *Schlup,* 513 U.S. at 324. Establishing actual innocence requires a showing of factual innocence, not mere legal insufficiency. *See Bousley v. United States,* 523 U.S. 614, 623 (1998); *Hampton v. United States,* 191 F.3d 695, 703 (6th Cir. 1999).

In order to pass through the actual innocence gateway, a petitioner's case must be "truly extraordinary." *Schlup,* 513 U.S. at 327.

Here, petitioner has not cited in his un-notarized "statement of the facts" the "new" evidence that he is relying on to establish a credible claim of actual innocence. Moreover, the Court gives little credence to petitioner's self-serving statements, which are not based on "new" evidence unavailable to petitioner at the time of his trial, implying that Cincinnati police officers sought to "frame [him]" and attempting to place blame for the offenses on another person whom petitioner knew at the time the crimes occurred and claimed "had a serious vendetta against me because his mistress, Angela Brewer, broke it off with him to be with me." Such "evidence" is insufficient to demonstrate a credible claim of actual innocence that would warrant review of petitioner's procedurally-defaulted claims on the merits.[3]

---

[3]     In separate motions pending before the Court, petitioner has sought to amend the petition to add a claim of "actual innocence" based on "new" evidence attached to his "Renewed Motion To Expand The Record" filed March 7, 2006. (*See* Docs. 36, 37).  By Order issued this date, the Court has denied petitioner's motion to amend the petition to add an "actual innocence" claim.  Moreover, although petitioner's motion to expand the record was granted, upon review of the documents attached to the motion (*see* Doc. 37), this Court concludes that to the extent such evidence is arguably "favorable" to petitioner, it does not constitute "material" exculpatory

16

Accordingly, in sum, because petitioner has neither demonstrated "cause" for his procedural defaults in the state courts nor made a sufficiently credible showing of his "actual innocence" in this case, petitioner has waived the grounds for relief alleged in Grounds Five through Sixteen of the petition due to his procedural defaults in the state courts.

## B. Petitioner Is Not Entitled To Habeas Relief Based On The Ineffective Assistance Of Trial Counsel Claim Alleged In Ground One Of The Petition

In Ground One of the petition, petitioner alleges that his Sixth Amendment right to effective assistance of counsel was violated when defense counsel disclosed the fact that petitioner had a prior criminal record to the jury during *voir dire* questioning.  (Doc. 1, pp. 10-11).

The Ohio Court of Appeals was the only state court to issue a reasoned decision addressing the merits of this claim on direct appeal.  Citing *Strickland v. Washington,* 466 U.S. 668 (1984), as well as a state supreme court case, the court overruled petitioner's assignment of error as follows:

> . . . .To prevail on his claim of ineffective assistance, Smith must first demonstrate that counsel's performance failed to meet an objective standard of reasonable representation.  "This requires a showing that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment."  Smith must also show that, as a result of the deficient performance, he suffered prejudice.  Prejudice is demonstrated by a showing of a reasonable probability that, but for trial counsel's deficient performance, the result of the proceeding would have been different.

During voir dire of potential jurors, defense counsel asked: "What do you

---

evidence sufficient to establish "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *See Brady v. Maryland,* 373 U.S. 83 (1963).  Therefore, in light of all the evidence (which also includes the evidence of guilt that was properly admitted at trial), petitioner has not shown as required under the *Schlup* standard of review for "actual innocence" claims that no reasonable juror would have found him guilty beyond a reasonable doubt if the additional, purportedly "exculpatory" evidence had been introduced at trial.

think about Mr. Smith telling you he has a prior record?"  Defense counsel did not provide the jurors with details of Smith's criminal history at that time.  We will not second-guess what appears to have been a tactical decision made by defense counsel to foreclose the sting of prior convictions when defense counsel anticipated that there was a possibility of their admission at trial. Even if it was unreasonable for defense counsel to anticipate the admission of the prior convictions at trial, Smith still cannot show prejudice.  The state's evidence included unequivocal eyewitness testimony of three persons placing Smith at the scene of the crimes for which he was convicted, thus drastically reducing the potential that the jury based its guilty verdicts for two of the three charges Smith faced on the fact that Smith might have had a criminal past.  Moreover, the fact that a tactical decision may backfire does not render counsel's assistance constitutionally ineffective.

(Doc. 17, Ex. 14, pp. 4-5) (footnote citations to cases omitted).

Under the applicable standard of review set forth in 28 U.S.C. § 2254(d), petitioner is not entitled to relief in this federal habeas corpus proceeding unless the state court's adjudication of his ineffective assistance of counsel claim resulted in a decision that (1) was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court, or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. *See* 28 U.S.C. § 2254(d); *see also Williams v. Taylor,* 529 U.S. 362, 402-03 (2000) (O'Connor, J., writing for majority on this issue); *Harris v. Stovall,* 212 F.3d 940, 942 (6th Cir. 2000), *cert. denied,* 532 U.S. 947 (2001); *Harpster v. Ohio,* 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied,* 522 U.S. 1112 (1998).

A state court decision is "contrary to" clearly established federal law as determined by the Supreme Court under § 2254(d)(1) if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  *Williams,* 529 U.S. at 405-06 (O'Connor, J.); *Harris,* 212 F.3d at 942; *see also Ruimveld v. Birkett,* 404 F.3d 1006, 1010 (6th Cir. 2005).

18

An "unreasonable application" of Supreme Court precedent occurs (1) if the state court identifies the correct legal standard but unreasonably applies it to the facts of the case, or (2) if the state court either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *Williams,* 529 U.S. at 407-08 (O'Connor, J.).

Under § 2254(d)(1)'s "unreasonable application" clause, a federal habeas corpus court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411 (O'Connor, J.); *see also Bell v. Cone,* 535 U.S. 685, 694 (2002); *McGhee v. Yukins,* 229 F.3d 506, 510 (6th Cir. 2000); *Harris,* 212 F.3d at 942.

The reasonableness inquiry is an objective one; it does not involve a subjective inquiry into whether or not reasonable jurists would all agree that the state court's application was unreasonable. *Williams,* 529 U.S. at 409-10 (O'Connor, J.); *see also Washington v. Hofbauer,* 228 F.3d 689, 698 (6th Cir. 2000); *Harris,* 212 F.3d at 942-43. Moreover, the writ may issue only if the application is objectively unreasonable "in light of the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision." *McGhee,* 229 F.3d at 510, 512 (citing *Williams,* 529 U.S. at 412).

In this case, the Ohio Court of Appeals correctly identified and applied the proper standard of review that was clearly established by the Supreme Court in *Strickland* for evaluating ineffective assistance of counsel claims. As the state court recognized, in order to establish a Sixth Amendment violation under *Strickland*, the petitioner must demonstrate: (1) his attorney made such serious errors he was not functioning as the "counsel" guaranteed by the Sixth Amendment; and (2) his attorney's deficient performance prejudiced the defense by undermining the reliability of the trial result. *See Strickland,* 466 U.S. at 687.

19

Under the first prong of the *Strickland* test, petitioner must demonstrate that his counsel's representation fell below an objective standard of reasonableness based on all the circumstances surrounding the case. *See id.* at 688. Judicial scrutiny of counsel's performance must be highly deferential, and a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight" and to evaluate the challenged conduct from counsel's perspective at the time of the conduct. *Id.* at 689. In determining whether or not counsel's performance was deficient, the Court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *See id.*

In order to satisfy the second "prejudice" prong of the *Strickland* test, petitioner must demonstrate a "reasonable probability" exists that, but for his counsel's deficient conduct, the result of the trial and appeal proceedings would have been different. *See id.* at 694. Petitioner has met his burden if he shows that the result of his trial would "reasonably likely have been different absent the errors." *See id.* at 695.

The Court need not examine the question of whether counsel's performance was deficient before addressing the question of whether petitioner was prejudiced by counsel's performance. The Court may dispose of an ineffective assistance of counsel claim by finding that petitioner has made an insufficient showing on either ground. *See id.* at 697.

Here, as the Ohio Court of Appeals found, petitioner's trial counsel asked prospective jurors during *voir dire* whether knowledge of the fact that petitioner had a "prior record," would influence their decision about "his guilt or innocence in this case." (*See* Doc. 21, Tr. 234, 239, 243, 245, 247, 253, 256, 259). Counsel did not provide details about petitioner's past criminal history and only indicated that "two prior convictions" from "15 years ago" were involved. (*See id.,* Tr. 239, 245).

It appears that, as the Ohio Court of Appeals determined, the questions were posed as part of a "tactical decision" to assess potential juror bias in advance of a trial where petitioner's prior record might be introduced into evidence. However, to the extent defense counsel's decision to disclose such information was based on an erroneous assumption that petitioner's prior convictions were admissible, it is arguable that counsel's conduct was unreasonable and thus was deficient under the first prong of the *Strickland* test. *Cf. Glenn v. Sowders,* 811 F.2d 605 (table), No. 85-5754, 1986 WL 18475, at **3 (6th Cir. Dec. 8, 1986) (unpublished), *cert. denied,* 482 U.S. 916 (1987).

20

Nevertheless, the Ohio Court of Appeals reasonably determined further that petitioner failed to show, as required under the second prong of the *Strickland* test, that trial counsel's challenged conduct prejudiced the defense by undermining the reliability of the trial result.  Counsel made only a general reference to petitioner's prior record, without disclosing any details about the past crimes which arguably could have inflamed the jurors against petitioner or otherwise could have served to undermine petitioner's credibility as a defense witness.  Moreover, each prospective juror who responded to counsel's *voir dire* question indicated that he or she would not find petitioner guilty on the current charges merely because he had prior convictions, which have "nothing to do with this case." (*See* Doc. 21, Tr. 234, 239, 243, 245, 247, 253, 256, 259).

Here, the jury acquitted petitioner of one of the burglary charges and found him guilty of a lesser-included offense on another charge.  Moreover, as the Ohio Court of Appeals reasonably found, the overwhelming evidence of guilt, which included "unequivocal eyewitness testimony of three persons placing [petitioner] at the scene of the crimes for which he was convicted, . . . drastically reduc[ed] the potential that the jury based its guilty verdicts for two of the three charges [he] faced" on its general knowledge of the fact that petitioner had a "criminal past" consisting of "two prior convictions" which "happened 15 years ago."

Therefore, as the Ohio Court of Appeals reasonably determined, petitioner has not demonstrated his counsel's challenged conduct amounted to ineffective assistance, because under the "prejudice" prong of the *Strickland* test, it is not reasonably likely, and indeed is highly unlikely, that the result of the trial would have been different if defense counsel had not referred to petitioner's prior record during voir dire.  *Cf. Glenn, supra,* 1986 WL 18475, at **4.

Accordingly, in sum, this Court concludes that petitioner is not entitled to habeas corpus relief based on the ineffective assistance of counsel claim alleged in Ground One of the petition, because the Ohio Court of Appeals' adjudication of this claim on direct appeal neither is contrary to nor involves an unreasonable application of the applicable standard of review clearly established by the Supreme Court in *Strickland*, and is based on a reasonable determination of the facts in light of the record evidence.

21

**C.  Petitioner Is Not Entitled To Habeas Relief Based On The Prosecutorial Misconduct Claim Alleged In Ground Two Of The Petition**

In Ground Two of the petition, petitioner contends he was denied his due process right to a fair trial when the prosecutor improperly referred to petitioner's inadmissible prior record at trial.  (Doc. 1, pp. 13-14).  Specifically, petitioner challenges the reference made in the following colloquy during petitioner's cross-examination:

Q.  As a matter of fact, you're under felony indictment for failure to pay child support –

[Defense Counsel]: Objection.

Q.  – aren't you?

THE COURT: That's sustained.

(*Id.*, p. 13; *see also* Doc. 21, Tr. 1070).

The Ohio Court of Appeals, which considered this claim on direct appeal,  was the only state court to render a reasoned decision addressing its merits.  Citing state case-law and the Supreme Court's decision in *Smith v. Phillips,* 455 U.S. 209 (1982), the court overruled the assignment of error, reasoning in relevant part as follows:

. . . .The test for prosecutorial misconduct is whether the remarks were improper, and, if so, whether the remarks prejudicially affected the accused's substantial rights.  The touchstone of the analysis "is the fairness of the trial, not the culpability of the prosecutor."  Clearly the prosecutor's question was improper, but defense counsel immediately objected and the trial court promptly sustained the objection.  The trial court also instructed the jury "not [to] speculate as to why the Court sustained the objection to any question or what the answer to such question might have been.  You must not draw any inference or speculate on the truth of any suggestion included in a question that was not answered."  Thus, although there was an improper question, Smith cannot show prejudice.  A jury is presumed to follow instructions given by the trial court.  Also, evidence of Smith's guilt was compelling from the testimony of the state's eyewitnesses to the two crimes for which he was convicted.  Because we cannot say that the prosecutor's conduct denied Smith a fair trial or materially prejudiced him, we accordingly, overrule [the] assignment of error.

(Doc. 17, Ex. 14, p. 6) (footnote citations to cases omitted).

As an initial matter, this Court recognizes that the scope of federal habeas corpus review of petitioner's prosecutorial misconduct claim is narrow because the federal court does not sit as an appellate court with supervisory power to rectify general trial errors. *Donnelly v. DeChristoforo,* 416 U.S. 637, 642 (1974). Although preliminarily the court confronted with a such a claim must determine whether the challenged conduct was improper, a finding of impropriety is not sufficient in itself to amount to a due process violation. *See, e.g., Darden v. Wainwright,* 477 U.S. 168, 179-80 (1986). Rather, as the Ohio Court of Appeals pointed out in its decision, "[t]he touchstone of due process analysis in such a case is the fairness of the trial, not the culpability of the prosecutor." *Phillips,* 455 U.S. at 219.

Where, as here, no specific constitutional right is alleged to have been infringed by the prosecutor, the prosecutorial misconduct claim is one of ordinary trial error, which does not rise to the level of a constitutional violation unless the misconduct "so infected the trial with unfairness as to render the resulting conviction a denial of due process." *Donnelly,* 416 U.S. at 642-43; *see also Darden,* 477 U.S. at 181 ("it 'is not enough that the prosecutor's remarks were  undesirable or even universally condemned[;]'" rather, the "relevant question" is whether the prosecutor's challenged conduct rendered the trial fundamentally unfair in violation of due process). The alleged misconduct must be examined within the context of the entire trial to determine whether it deprived the defendant of a fair trial. *United States v. Young,* 470 U.S. 1, 11-12 (1985).

Factors to be considered in weighing whether a prosecutor's misconduct amounts to a due process violation are: (1) the degree to which the misconduct has a tendency to mislead the jury and to prejudice the accused, *see Darden,* 477 U.S. at 182, and *Young,* 470 U.S. at 12; (2) whether the misconduct is isolated or extensive, *see Donnelly*, 416 U.S. at 646; (3) whether the misconduct is deliberate, *see id.* at 647; (4) whether the prosecutor manipulated or misstated the evidence, *see Darden,* 477 U.S. at 182, and *Berger,* 295 U.S. at 84-85; (5) the strength of the competent proof to establish the guilt of the accused, *see Darden,* 477 U.S. at 182; (6) whether the misconduct was objected to by defense counsel, *see id.* at 182-183 & n. 14, and *Young,* 470 U.S. at 13; and (7) whether a curative instruction was given by the trial judge, *see Darden,* 477 U.S. at 182.[4]

---

[4]  *See also Gillard v. Mitchell,* 445 F.3d 883, 897 (6th Cir. 2006) (citing *Bowling v. Parker,* 344 F.3d 487, 512-13 (6th Cir. 2003), *cert. denied,* 543 U.S. 842 (2004)); *Farmer v. Hofbauer,* 1 Fed.Appx. 372, 377-78 (6th Cir. Jan. 10, 2001) (not published in Federal Reporter);

23

Furthermore, in this federal habeas corpus proceeding challenging a state conviction, the Court may not grant relief based on a constitutional trial error unless that error "had a substantial and injurious effect or influence in determining the jury's verdict." *See Calderon v. Coleman,* 525 U.S. 141, 145 (1998) (quoting *Brecht v. Abrahamson,* 507 U.S. 619, 637 (1993)).[5]

This Court has reviewed the trial transcript and agrees with the Ohio Court of Appeals' determination that, although the prosecutor's challenged remark was improper, it did not deprive petitioner of a fair trial.

The remark, although most likely deliberate, was isolated. Moreover, because the prosecutor's question was never answered either affirmatively or negatively, the suggestion that petitioner was "under felony indictment for failure to pay child support" was not established as a fact for the jury's consideration. It is highly unlikely that the jurors were inflamed or otherwise misled to convict petitioner of burglary and attempted burglary as a result of the prosecutor's one passing reference to a felony indictment that may or may not have issued against petitioner for the unrelated offense of failure to pay child support.

Finally, as the Ohio Court of Appeals reasonably found, there was little, if any, risk that the alleged misconduct deprived petitioner of a fair trial in light of (1) the "compelling" evidence consisting of eyewitness testimony establishing petitioner's guilt for the burglary and attempted burglary offenses he was convicted of committing; (2) the fact that defense counsel immediately lodged an objection to the prosecutor's improper question, which was sustained; and (3) the trial court's explicit instructions to the jury prior to deliberations not to "speculate" about any question to which an objection was sustained, and most importantly, not to "draw any inference or speculate on the truth o[f] any suggestion included in a question that was not answered." (*See* Doc. 21, Tr. 1187).

_____

*Givens v. Yukins,* 238 F.3d 420 (table), No. 98-2429, 2000 WL 1828484, at **6-7 (6th Cir. Dec. 5, 2000) (unpublished); *Gordon v. Kelly,* 205 F.3d 1340 (table), No. 98-1905, 2000 WL 145144, at **7 (6th Cir. Feb. 1, 2000) (unpublished); *Pritchett v. Pitcher,* 117 F.3d 959, 964 (6th Cir.) (citing *Serra v. Michigan Dep't of Corrections,* 4 F.3d 1348, 1355 (6th Cir. 1993), *cert. denied,* 510 U.S. 1201 (1994)), *cert. denied,* 522 U.S. 1001 (1997).

[5] Any constitutional error based on a claim of prosecutorial misconduct must meet the *Brecht* standard to warrant habeas corpus relief. *Gordon v. Kelly,* 205 F.3d 1340 (table), No. 98-1905, 2000 WL 145144, at **12 (6th Cir. Feb. 1, 2000) (unpublished); *Hensley v. McGinnis,* 188 F.3d 507 (table), No. 98-1675, 1999 WL 685932, at **3-4 (6th Cir. Aug. 25, 1999) (unpublished)

24

Even assuming, *arguendo*, that the alleged misconduct amounted to constitutional error in this case, for the foregoing reasons, the Court concludes that petitioner has not demonstrated he is entitled to habeas corpus relief because the error did not have "a substantial and injurious effect or influence in determining the jury's verdict." *See Brecht*, 507 U.S. at 637.

Therefore, the prosecutorial misconduct claim alleged in Ground Two of the petition should be denied as lacking in merit.

### D. Petitioner Is Not Entitled To Habeas Relief Based On His Claim In Ground Three Of A *Batson* Violation

In Ground Three of the petition, petitioner alleges that he was denied his Fourteenth Amendment rights to equal protection and due process when "the prosecutor utilized a peremptory challenge to exclude the only African-American member of the jury pool" in violation of *Batson v. Kentucky*, 476 U.S. 79 (1986). (Doc. 1, pp. 14-15).

"It is well settled that a state denies a defendant equal protection of the laws when he is tried before a jury from which members of his race have been purposefully excluded." *United States v. Harris*, 192 F.3d 580, 586 (6th Cir. 1999) (citing *Strauder v. West Virginia*, 100 U.S. 303 (1879)). In *Batson*, the Supreme Court extended this principle to the use of peremptory challenges in the selection of the petit jury, holding that "the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant." *See Batson*, 476 U.S. at 85-89.

The Court outlined a three-step approach for evaluating a claim that the prosecutor used peremptory challenges to exclude jurors on the improper basis of race. First, the defendant must make a *prima facie* showing of purposeful discrimination by the prosecutor in the selection of the jury. *See id.* at 96-97; *see also Hernandez v. New York*, 500 U.S. 352, 358 (1991) (plurality opinion). A defendant establishes a *prima facie* case by showing he is a member of a cognizable racial group; the prosecutor has exercised peremptory challenges to remove from the jury members of the defendant's race; and these facts and any other relevant circumstances raise an inference that the prosecutor used the peremptory challenges to exclude persons from the petit jury on account of their race. *Harris*, 192 F.3d at 586 (citing *United States v. Hill*, 146 F.3d 337, 340 (6th Cir. 1998) (quoting *Batson*, 476 U.S. at 96)).

25

Once the defendant makes a *prima facie* showing of purposeful discrimination, the burden shifts to the State to come forward with a race-neutral explanation for challenging black jurors. *Batson,* 476 U.S. at 97. This is an extremely light burden. *Harris,* 192 F.3d at 586. At this step of the inquiry, the explanation tendered by the prosecutor need not be persuasive nor even plausible. *Purkett v. Elem,* 514 U.S. 765, 768 (1995) (per curiam). As the Court explained in *Hernandez:* "A neutral explanation in the context of our analysis here means an explanation based on something other than the race of the juror. At this step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." *Hernandez,* 500 U.S. at 360 (plurality opinion).

It is not until the third step that the persuasiveness of the State's justification becomes relevant. *Purkett,* 514 U.S. at 768. At this step of the inquiry, the court must determine whether the defendant has met his burden of proving purposeful discrimination. *Hernandez,* 500 U.S. at 359, 363 (plurality opinion) (citing *Batson,* 476 U.S. at 98). "At that stage, implausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination." *Purkett,* 514 U.S. at 768.

The trial court's decision at this step of the inquiry on the ultimate question of discriminatory intent represents a finding of fact to be accorded "great deference" by a reviewing court. *Hernandez,* 500 U.S. at 364 (plurality opinion); *see also Batson,* 476 U.S. at 98 n.21. "Deference to trial court findings on the issue of discriminatory intent makes particular sense in this context because . . . the finding 'largely will turn on evaluation of credibility.'" *Hernandez,* 500 U.S. at 365 (plurality opinion) (quoting *Batson,* 476 U.S. at 98 n.21)).

In the typical case, the decision will turn on whether counsel's race-neutral explanation for a peremptory challenge should be believed, wherein there "will seldom be much evidence bearing on that issue" and the "best evidence often will be the demeanor of the attorney who exercises the challenge." *Id.* "[E]valuation of the prosecutor's state of mind based on demeanor and credibility lies 'peculiarly within a trial judge's province.'" *Id.* (quoting *Wainwright v. Witt,* 469 U.S. 412, 428 (1985)). Deference is particularly warranted in cases where the proffered race neutral explanation centers on the juror's body language, mannerisms, intonation and demeanor, factors which are given to "on-the-spot interpretation" by the trial judge. *See Lyons v. Lee,* 203 F. Supp.2d 512, 535 (M.D.N.C. 2002) (and cases cited therein), *appeal dismissed,* 316 F.3d 528 (4th Cir.), *cert. denied,* 540 U.S. 908 (2003).

On direct review of a state-court judgment, the court may not overturn the trial court's finding on the issue of discriminatory intent unless convinced that the determination was clearly erroneous.  *Hernandez,* 500 U.S. at 369 (plurality opinion).  In this federal habeas corpus proceeding, the state courts' factual findings on this issue are presumed correct unless petitioner demonstrates by clear and convincing evidence that such findings are erroneous.  *See supra* p. 2 n.1; 28 U.S.C. § 2254(e)(1); *Purkett,* 514 U.S. at 769; *Hernandez,* 500 U.S. at 366 (plurality opinion).

In this case, the *Batson* issue arose when the prosecutor exercised his second peremptory challenge to excuse the Mr. Magette from the jury pool, which was objected to by defense counsel.  (Doc. 21, Tr. 277-78).  An in-chambers conference was held outside the jury's presence, where the following colloquy occurred:

> DEFENSE COUNSEL:  . . . .I'd like the record to reflect that of the 22 jurors in the jury pool, Mr. Magette is the only black person in the  whole jury pool, and I think this raises a *Batson* challenge, and I'd like to find out, and I challenge his dismissal.
>
> ****
>
> PROSECUTOR:  Your Honor, I'm aware of my responsibilities under *Batson,* and I say that respectfully.  There are a variety of reasons why Mr. Magette, in my opinion, would not serve as a good juror.
>
> I found his answers to questions, frankly, posed by the defense to be somewhat evasive.  But during several questions that I asked, I don't know that he – maybe it's my fault, but I don't know that he understood them.  I think that – the question that he responded to in regards to the child witness, I thought he definitely gave a clear bias against children as witnesses.  That was the answer that I heard.
>
> Frankly, for lack of a better word, I think he's unsophisticated.  I think this is the kind of case where there will be some complicated evidence.  The expert is expected to testify.
>
> I think, again based on his demeanor, his appearance in court, the way he spoke, the way he answered questions, I don't believe he would be a juror that the State feels is necessary, and, frankly, it has nothing to do with his race.

27

THE COURT:  The objection is overruled.  It is noted for the record....

(*Id.,* Tr. 278-79).

Petitioner challenged the trial court's ruling on direct appeal.  The Ohio Court of Appeals, which was the last state court to render a reasoned decision addressing the merits of petitioner's *Batson* claim, properly considered the issue utilizing the three-step analysis discussed above, *see supra* pp. 24-25, as clearly established by Supreme Court precedents.  (*See* Doc. 17, Ex. 14, p. 7).  The court rejected petitioner's claim of constitutional error, reasoning in pertinent part as follows:

> . . . .In this case, upon the state's exercise of a second peremptory challenge, its first against an African-American potential juror, defense counsel asked that the state articulate its racially neutral reason for the challenge.  The state provided reasons that did not involve race.  The record supports the factual basis for the state's legitimate concern about whether the potential juror Magette, based on his confusing answers given to both defense counsel and the state, quite understood what he was being asked and whether he harbored bias against the credibility of a child witness.  Thus, we cannot say that the trial court's decision to overrule the *Batson* challenge was clearly erroneous given the racially neutral reasons for striking Magette. . . .  (*Id.*).

Thus, it appears from the record that both the trial judge and the state appellate court implicitly found the prosecutor's proffered race-neutral reasons for excusing Mr. Magette from the jury pool to be legitimate and credible.  Petitioner has failed to demonstrate by clear and convincing evidence that such findings are erroneous, *see supra* p. 2 n.1; 28 U.S.C. § 2254(e)(1).  Moreover, upon review of the trial transcript, this Court agrees with the Ohio Court of Appeals' determination that the "record supports the factual basis for the state's legitimate concern" as to whether Magette fully understood the questions that were asked and whether Magette held a "bias against children as witnesses."  (*See* Doc. 21, Tr. 220, 241-42).

Accordingly, petitioner has not demonstrated that the state courts' adjudication of his *Batson* claim resulted in a decision that is contrary to, or involves an unreasonable application of, clearly established Supreme Court precedent, or is based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  *See* 28 U.S.C. §2254(d); *see also Williams,* 529 U.S. at 402-03 (O'Connor, J.).

Further, petitioner has neither cited nor submitted clear and convincing evidence of

28

purposeful discrimination by the prosecution sufficient to rebut the presumption of correctness to be accorded the state courts' conclusion that the prosecutor did not discriminate on the basis of race in exercising the peremptory challenge against Mr. Magette. *See* 28 U.S.C. § 2254(e)(1); *Purkett,* 514 U.S. at 769; *Hernandez*, 500 U.S. at 364-66; *Batson*, 476 U.S. at 98 n.21.

Petitioner, therefore, is not entitled to habeas corpus relief based on his *Batson* claim alleged in Ground Three of the petition.

## E. Petitioner Is Not Entitled To Relief Based On His Claim Alleged In Ground Four That He Was Denied His Right To Present A Defense

In Ground Four of the petition, petitioner asserts that he was denied his due process right to present a defense when the trial court limited the testimony of a defense expert witness "on the matter of the psychology of eyewitness identification." (Doc. 1, pp. 15-16). It appears from the record that petitioner specifically challenges the trial court's rulings sustaining the prosecutor's objections to the expert's testimony about his work and various studies he had conducted, as well as sustaining another objection to, and striking, the defense expert's testimony that certain published research studies "showed that the 'false identification rate' was reduced by 42% by using a specific format when presenting the photos to the witness." (*See* Doc. 17, Ex. 12, p. 14; *see also* Doc. 21, Tr. 791, 805, 813).

The Ohio Court of Appeals was the only state court to render a reasoned decision addressing the merits of petitioner's claim on direct appeal. The court overruled the assignment of error, reasoning in relevant part as follows:

> Concerning the eighth assignment of error, while Smith's eyewitness identification expert, Dr. Solomon M. Fulero, testified at trial, he contends that the expert's testimony was unfairly and prejudicially limited. We disagree and also note that Dr. Fulero's testimony at trial, as it appears in the transcript, spanned ninety pages. Clearly the state's case was based primarily on eyewitness identification, and Smith's identity was at issue. The trial court properly permitted Dr. Fulero to testify at length as to variables that might impair the accuracy of eyewitness identifications, and about what would have been a more appropriate method of presentation of photographic arrays to the eyewitnesses. It should be noted that one variable not mentioned by Dr. Fulero on direct examination but confirmed by him under cross-examination by the prosecutor was that "same-race eyewitness identification rates are

more accurate across the charts," and the prosecutor pointed out to Dr. Fulero that this case included a same-race eyewitness identification. After reviewing the wide-ranging testimony given by Dr. Fulero, we cannot say his testimony was unfairly and prejudicially limited. . . .

(Doc. 17, Ex. 14, p. 14) (footnote citation to state case omitted).

In this case, because it appears the state appellate court addressed petitioner's claim of error solely in terms of state law, the deferential standard of review set forth in 28 U.S.C. § 2254(d), *see supra* pp. 17-18, is inapplicable. By its terms, this provision only applies to constitutional claims that were "adjudicated on the merits in State court proceedings." *Clinkscale v. Carter,* 375 F.3d 430, 436 (6th Cir. 2004) (citing *Maples v. Stegall,* 340 F.3d 433, 436 (6th Cir. 2003)), *cert. denied,* 543 U.S. 1177 (2005).

The Sixth Amendment's compulsory process clause guarantees the right of a criminal defendant to present witnesses in his favor, and is applicable to the states through the Fourteenth Amendment's due process clause. *Washington v. Texas,* 388 U.S. 14, 17-19 (1967); *see also Taylor v. Illinois,* 484 U.S. 400, 408 (1988).

However, a defendant's compulsory process right is not absolute. The Sixth Amendment does not confer the right to present testimony free from the legitimate demands of the adversarial system; thus, the defendant must comply, like the prosecution, with established rules of procedure and evidence to ensure both fairness and reliability in the ascertainment of guilt or innocence. *Taylor,* 484 U.S. at 410-11 & n.15, 412-13 (quoting *United States v. Nobles,* 422 U.S. 225, 241 (1975)); *see also United States v. Scheffer,* 523 U.S. 303, 308 (1998); *Chambers v. Mississippi,* 410 U.S. 284, 302 (1973).

Because the compulsory process right is "balanced against a court's leave to set reasonable limits on the admission of evidence[,] . . . judges are accorded 'wide latitude' in excluding evidence that poses an undue risk of 'harassment, prejudice [or] confusion of the issues' or evidence that is 'repetitive or only marginally relevant.'" *United States v. Blum,* 62 F.3d 63, 67 (2nd Cir. 1995) (quoting *Delaware v. Van Arsdall,* 475 U.S. 673, 679 (1986)). Therefore, in a federal direct review proceeding, the trial court's evidentiary ruling is reviewed under an abuse of discretion standard. *Id.*

30

In a proceeding such as this, involving federal collateral review of a state conviction, the trial court's ruling on the admission or exclusion of evidence under state law generally may not be questioned unless the ruling rendered the trial so fundamentally unfair as to amount to a denial of due process. *See, e.g., Giles v. Schotten,* ___ F.3d ___, No. 04-3708, 2006 WL 1506713, at *4 (6th Cir. June 2, 2006) (to be published).[6]

In a case involving a claim of ordinary trial error where no specific constitutional guarantee is implicated, the alleged error does not amount to a fair trial violation unless when viewed in the context of the entire record it is found to have "tilted the scales in favor of a guilty verdict" or was "so egregious as to have nullified the legitimacy of the properly admitted substantive evidence of guilt." *Lundy v. Campbell*, 888 F.2d 467, 473 (6th Cir. 1989), *cert. denied,* 495 U.S. 950 (1990); *Webster v. Rees,* 729 F.2d 1078, 1081 (6th Cir. 1984); *see also Walker,* 703 F.2d at 968.

Whether or not petitioner's right to present a defense is characterized as a general right to a fair trial rooted directly in the Fourteenth Amendment's due process clause or as a specific constitutional right guaranteed by the Sixth Amendment's compulsory process clause, if it is determined that petitioner's constitutional rights were infringed by the exclusion of testimony for the defense, the trial court's ruling is subject to "harmless error" analysis. *See Blum,* 62 F.3d at 68 (citing *Crane v. Kentucky,* 476 U.S. 683, 691 (1986)).

This means, as discussed above with respect to petitioner's prosecutorial misconduct claim alleged in Ground Two of the petition, *see supra* p. 22, that petitioner is not entitled to habeas corpus relief unless the alleged constitutional error had a "substantial and injurious effect or influence in determining the jury's verdict." *See, e.g., Calderon,* 525 U.S. at 145-47; *O'Neal v. McAninch,* 513 U.S. 432, 435-36 (1995); *see also Brecht,* 507 U.S. at 637.

---

[6] Citing *Coleman v. Mitchell,* 268 F.3d 417, 439 (6th Cir. 2001) (in turn quoting *Patterson v. New York,* 432 U.S. 197, 202 (1977)), *cert. denied,* 535 U.S. 1031 (2002); and *Baze v. Parker,* 371 F.3d 310, 324 (6th Cir. 2004), *cert. denied,* 544 U.S. 931 (2005)); *Cooper v. Sowders,* 837 F.2d 284, 286 (6th Cir. 1988); *Walker v. Engle,* 703 F.2d 959, 962 (6th Cir.), *cert. denied,* 464 U.S. 951 (1983); *Logan v. Marshall,* 680 F.2d 1121, 1123 (6th Cir. 1982); *Bell v. Arn,* 536 F.2d 123, 125 (6th Cir. 1976).

31

Under this "harmless error" standard, if upon review of the entire record, the court is convinced that "the error did not influence the jury, or had but slight effect," the conviction must stand. *O'Neal,* 513 U.S. at 436-38; *Kotteakos,* 328 U.S. at 764. On the other hand, if the court "is left in grave doubt" and "cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error," the court must find that the error had a substantial influence on the jury and the conviction cannot stand. *O'Neal,* 513 U.S. at 436-38; *Kotteakos,* 328 U.S. at 765.

In this case, the Ohio Court of Appeals determined that the trial court did not "unfairly and prejudicially limit[]" the testimony of Dr. Fulero, the defense "eyewitness identification expert." After reviewing the nearly ninety-pages of the trial transcript containing Dr. Fulero's testimony (*see* Doc. 21, Tr. 787-877), 45 pages of which were in response to questions posed by defense counsel (*see id.,* Tr. 787-818, 835-39, 857-67), this Court agrees with the state appellate court's determination.

At one point, the trial judge explained out of the presence of the jury that Dr. Fulero's testimony was limited to the extent he could not testify "as to the federal guidelines which do not apply, at least yet, to state court cases." (*See id.,* Tr. 827). The judge explained further that he "stopp[ed]" Dr. Fulero from testifying about "42 percent in regard to anything," because it had not been presented in Dr. Fulero's expert report required by the court prior to trial as to "what [Dr. Fulero was] going to testify to;" the judge also refused to allow Dr. Fulero to give an expert opinion about what "[i]t could be," which is insufficient to establish the reliability of medical testimony. (*Id.,* Tr. 827-29). In light of these reasons, it appears that the few limits placed by the court on Dr. Fulero's testimony were reasonable and fell within the "wide latitude" accorded judges in excluding evidence that poses a risk of unreliability or confusion of the issues or that is "repetitive or only marginally relevant" to the case at hand. *See Blum,* 62 F.3d at 67.

Accordingly, this Court concludes that the minimal restrictions placed on Dr. Fulero's testimony did not have a "substantial and injurious effect or influence in determining the jury's verdict" under the *Brecht* "harmless error" standard. *See Calderon,* 525 U.S. at 145-47. As the Ohio Court of Appeals found, Dr. Fulero was allowed to testify "at length as to variables that might impair the accuracy of eyewitness identifications, and about what would have been a more appropriate method of presentation of photographic arrays to the eyewitnesses." (Doc. 17, Ex. 14, p. 14). Upon review of the entire record "without stripping the [allegedly] erroneous action from the whole," the Court is convinced that any error by the trial court in prohibiting Dr. Fulero from testifying about a few matters concerning

32

eyewitness identifications had, at best, only a "slight effect" on the jury's determination of petitioner's guilt or innocence in this case. *See O'Neal,* 513 U.S. at 436-38; *Kotteakos,* 328 U.S. at 764.

Therefore, petitioner is not entitled to habeas relief based on his claim alleged in Ground Four of the petition that he was denied his constitutional right to present a defense.

<u>Conclusion</u>

Upon careful consideration of the petitioner's objections, and upon conducting a *de novo* review of the record, especially in light of petitioner's objections, the Court finds that petitioner's contentions have either been adequately addressed and properly disposed of by the Judge or present no particularized arguments that warrant specific responses by this Court. The Court finds that the Judge has accurately set forth the controlling principles of law and properly applied them to the particular facts of this case and agrees with the Judge that petitioner's Petition for Writ of Habeas Corpus (doc. no. 1) be denied.

Accordingly, the Court accepts the factual findings and legal reasoning of the Magistrate Judge and hereby **ADOPTS** his Report and Recommendation dated July 20, 2006. Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) is **DENIED WITH PREJUDICE**.

A certificate of appealability shall not issue with respect to the claims alleged in Grounds Five through Sixteen of the petition, which this Court has concluded are waived and thus barred from review on procedural grounds, because "jurists of reason" would not find it debatable whether this Court is correct in its procedural ruling. *See Slack v.*

- 33 -

*McDaniel,* 529 U.S. 473, 484-85 (2000).[7]  A certificate of appealability also shall not issue with respect to petitioner's remaining claims alleged in Grounds One through Four of the petition, which have been addressed on the merits herein, because petitioner has failed to make a substantial showing of the denial of a constitutional right in any of these grounds for relief.  *See* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court **CERTIFIES** pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and therefore **DENIES** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity.  *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

This matter is **TERMINATED** on the docket of this Court.

**IT IS SO ORDERED.**

                                         s/Herman J. Weber
                                       Herman J. Weber, Senior Judge
                                       United States District Court

---

[7]  Because this Court finds that the first prong of the two-part *Slack* standard has not been met in this case, it need not address the second prong of *Slack* as to whether or not "jurists of reason" would find it debatable whether petitioner has stated a viable constitutional claim for relief in Grounds Five through Sixteen of the petition.  *See Slack*, 529 U.S. at 484.